---

## THE ROYAL ARCH.[1]

*(Circuit Court, E. D. New York. June 12, 1884.)*

1. COLLISION BETWEEN SAILING VESSELS—LIGHTS—APPEAL.—EVIDENCE.

Where, in an action arising out of a collision between two schooners, the district judge, "with some hesitation, arrived at the conclusion that the collision must be attributed to the omission to keep a careful lookout on the N. F., and not to a failure on the part of the R. A., to exhibit the lights required by law;" and in the circuit court the additional proof was put in of the master of a third vessel, who at the time saw no light on the R. A. when she was in such a position that one of her lights ought to have been seen by him, if it had been a proper light,—on this evidence the district court decree was reversed.

2. SAME—CASE STATED.

On the night of February 6, 1884, a collision occurred on the high seas between two schooners, the N. F. and the R. A. The wind was from S. W. to S. S. W. The N. F. had her proper regulation lights set and brightly burning, and was sailing N. by W. The R. A., which was close-hauled on the starboard tack, was seen from the N. F. when about half a mile off, but her green light, which she should have shown, was not visible, and her course could not be then determined. She was watched, however, and as soon as her course could be determined, the helm of the N. F. was put hard up and her mizzen-peak dropped, but the vessels were then so near that a collision ensued. The green light of the R. A. was not properly and brightly burning. She held her course till just before the collision, and then attempted to alter it, but too late. *Held.* That the R. A. was in fault in not having a green light, such as was required by law; that it was the duty of the N. F. to avoid the R. A., but she was relieved from this duty by the failure of the R. A. to exhibit any light which those on the N. F. could see before the collision; and their ignorance

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

of the course of the R. A., until it was too late for the N. F. to do anything to avoid the collision, was excusable, and was produced by such fault of the R. A.; that the R. A. was solely in fault, and must be *held* liable for the collision.

In Admiralty.

In this case, which came before the circuit court by appeal from a decree of the district court, the circuit court found the following facts:

(1) Shortly after 4 o'clock on the morning of the sixth of February, 1884, a collision occurred between the schooner Nellie Floyd and the schooner Royal Arch, by which both vessels were seriously damaged. The former was bound from Georgetown, South Carolina, to New York; the latter from Wiscasset, Maine, to Baltimore, Maryland. The collision took place on the Atlantic ocean, at a point about S. S. E. from the Navesink Highlands, off the coast of New Jersey.

(2) At the time the night was dark, and the weather was somewhat hazy, but lights of vessels could be seen at a considerable distance off, and if of the character required by law, and capable of being seen on a dark night with a clear atmosphere at a distance required by law, could be seen at the time in question, by proper observers, at a sufficient distance off to enable a collision to be avoided by them. The wind was from S. W. to S. S. W., blowing a fresh breeze. Previous to and at the time of the collision, the Nellie Floyd had her regulation side lights properly set and brightly burning, and a competent and vigilant lookout properly stationed and faithfully attending to his duties. She was sailing free, on her port tack, at a speed of about six or seven miles an hour. For about an hour before the collision she had been steering by compass N. by W. The Royal Arch was sailing close-hauled on her starboard tacks, at a speed of from three to four miles an hour.

(3) The Royal Arch was first discovered by the Nellie Floyd when distant about half a mile, bearing off the Nellie Floyd's port bow. Although the Royal Arch had her regulation lights set and burning, her green light on her starboard side, (which was the light which would have been visible to those on the Nellie Floyd if it had been of the character required by law, and capable of being seen on a dark night, with a clear atmosphere, at the distance required by law, and which could have been seen at the time by those on board of the Nellie Floyd if it had been of the character required by law, and capable of being seen on a dark night, with a clear atmosphere, at the distance required by law,) was not seen by those on board the Nellie Floyd, although they were vigilant and attentive to their duty in looking out for vessels and lights, for the reason that such green light of the Royal Arch was not of the character required by law, and was not capable of being seen on a dark night, with a clear atmosphere, at the distance required by law, and was not of such a character as to brightness that it could have been seen at the time by those on board of the Nellie Floyd in season for them to avoid a collision. Those on the Nellie Floyd were vigilant and attentive to their duty; but not seeing any lights on the Royal Arch, saw nothing of her till they saw her sails, and then were unable to determine what course the Royal Arch was on, and she was reported by the lookout as a sail on the weather bow. From the time she was first discovered and reported to the time of the collision she was continually watched from the Nellie Floyd, the master of the latter using his glasses.

(4) As soon as the course of the Royal Arch could be determined, the helm of the Nellie Floyd was put hard up and her mizzen-peak was dropped, and although she fell off, still the vessels were so close to each other that the Nellie Floyd could not avoid the collision.

(5) At no time after the Royal Arch was first discovered from the Nellie Floyd were any side lights or any other light upon the Royal Arch visible to

or capable of being seen by those on board of the Nellie Floyd, and the latter were, both prior to that time and during all that time, exercising proper vigilance, watchfulness, and attention in looking for some light upon the Royal Arch down to the time of the collision.

(6) The red light of the Nellie Floyd was seen from the Royal Arch three-quarters of a mile off, about three points off her starboard bow. Nothing was done on board the Royal Arch to avoid a collision until it was too late, although the courses of the vessels were such, if continued, as to render a collision inevitable. After the red light of the Nellie Floyd was discovered from the Royal Arch, there was time enough before the collision for the Royal Arch to change her course, and avoid a collision, by putting her helm hard down, provided the Nellie Floyd should keep her course. The Royal Arch kept her course until just before the collision, when she attempted to alter it so as to avoid a collision, but there was then not sufficient time for her to make a successful change.

And on the foregoing facts the circuit court found the following conclusions of law:

(1) The Royal Arch was improperly navigated, in that she did not have her regulation side lights, and especially her green light, properly and brightly burning, and for that reason she was the sole culpable cause of the collision. It was her duty to keep her course, as she did, on seeing the red light of the Nellie Floyd. It was the duty of the Nellie Floyd to avoid the Royal Arch, but she was relieved from such duty by the failure of the Royal Arch to exhibit any light which those on the Nellie Floyd could see before the collision; and their ignorance of the course of the Royal Arch, until it was too late for the Nellie Floyd to do anything to avoid the collision, was excusable, and was produced by such fault of the Royal Arch. (2) The Nellie Floyd was, in every respect, properly and carefully navigated, and in nowise caused, or tended to cause, the collision. (3) The decree of the district court must be reversed, and a decree be entered for libelants, for their damages, with interest, and their costs in the district court and in this court; such damages to be ascertained by a reference in this court.

*Owen & Gray,* for the Nellie Floyd.

*Goodrich, Deady & Platt,* for the Royal Arch.

Accompanying the foregoing findings was the following opinion:

BLATCHFORD, Justice. The district judge, in his opinion,[1] states that after a careful examination of the testimony, and with some hesitation, he has arrived at the conclusion that the collision was attributable "to the omission to keep a careful lookout on the Nellie Floyd, and not a failure on the part of the Royal Arch to exhibit the lights required by law." The testimony was, none of it, taken in court before the judge, but all of it by deposition out of court. In this court there has been added to the proof for the libelants the deposition of the master of a vessel which was sailing on the same course with the Nellie Floyd at the time, and just behind her; and who, though using

[1] The opinion of the district court was as follows, (filed March 1, 1884:)

BENEDICT, J. After a careful examination of the testimony, and with some hesitation, I have arrived at the conclusion that the collision in question must be attributed to the omission to keep a careful lookout on the Nellie Floyd, and not to a failure on the part of the Royal Arch to exhibit the lights required by law. The libel against the Royal Arch must therefore be dismissed, and the libel against the Nellie Floyd sustained. The prevailing party must recover his costs.

his opera-glass, saw no light on the Royal Arch, when the latter was approaching in such a position that her green light ought to have been seen by him, as well as from the Nellie Floyd, if it had been a proper light. On the whole evidence, I must pronounce for the Nellie Floyd.

